## JAMES A. RUSS *versus* WALDO MUTUAL INSURANCE CO.

If the declaration on a policy of insurance contain sufficient allegations, which, if proved, would warrant a judgment for the plaintiff; and the defendants simply file the following specification of defence;—"the defendants expect to prove the act of barratry on the part of the master, which act was not covered by the policy;" the plaintiff may safely rest his case after reading the writ to the jury; and he will be entitled to a verdict, unless the defendants, taking upon themselves the burden of proof, maintain their specified defence.

If the master sailed the vessel at the halves, the usual terms, manning and victualling her, and paying half of her port charges, and so continued to sail her till she was lost; this fact, though undisclosed to the insurers, would not be material, except so far as it would allow the defendants to prove barratry on the part of the master; otherwise the fact would be immaterial, unless the master, under such circumstances, with no insurance, should be induced by selfish and corrupt motives to disregard his duty to all parties interested in the safety of the vessel, himself among the rest, which the Court will not assume.

When the plaintiff, before the loss, being bound on a voyage at sea, went with O. A. to the defendant's office, and there their secretary wrote on the back of the policy, in suit, the following order:—"In case of loss, pay to O. A.," and the plaintiff signed it and left it with O. A. for collection in case of loss in the plaintiff's absence, the plaintiff being then indebted to him on a balance of account, and, as security for said balance, which was soon thereafter settled and paid:—*Held*, that the transaction did not constitute a pledge that would render the policy void, but that it is inferable the policy was to be restored to the plaintiff, on his return, in case no loss had occurred or collection made.

ON REPORT, from *Nisi Prius*, FOX, J. presiding.

ASSUMPSIT on a policy of insurance.

The facts appear in the opinion of the Court.

*Jewett* and *Chase*, for the plaintiff.

*W. G. Crosby*, for the defendants, submitted an elaborate brief, arguing the following propositions among others.

The defendants may avail themselves of any defence in law or fact, which the plaintiff's testimony discloses, whether embraced in the specifications or not.

The master, up to the time of the loss, sailed the vessel on shares, and thus became owner *pro hac vice*. Being

owner *pro hac vice*, he could not commit barratry.    1 Phil.
on Ins., p. 630, sub sect. 1082 ; *Taggard & al.* v. *Loring*,
16 Mass., 336.

Defendants did not *contract* to insure against barratry of
the master, yet, by operation of law, they are *made* respon-
sible for his very acts, which would have been barratry,
could he have committed that offence.

The policy was void on account of the wilful concealment
by the plaintiff that the master was owner *pro hac vice.*
This fact was material ; because, when a vessel is sailed by
a master on shares, and he is thereby owner *pro hac vice,*
the risk is greater than when he sails in capacity of master
only.    In that capacity, he has the strongest inducements
possible to save the ship, and thereby save his employment
and wages.    Otherwise, he is interested in one-half of the
freight and in the stores.    He may insure his share in both,
and then lacks stimulus to exertion for her preservation.

Insurers might insure when master sails as master, when
they would not if he sailed as owner *pro hac vice.*

Every fact is material which there is a just reason to be-
lieve might determine the underwriters to insure, or influ-
ence their estimate of the premium.    1 Phil. on Ins., 315,
*et seq.* ˌ Ib., 288, 380.

As to what assured is " bound to communicate."    1 Phil.
on Ins., sub sect. 571 ; 1 Arnold on Ins., original p. 487.

What constitutes concealment in insurance.    1 Phil. on
Ins., p. 287, sub sect. 531.

By the terms of the policy, it was " to become void in case
of its being assigned, transferred or *pledged* without the
previous consent in writing of the owners."

The delivery to Angier was a *pledge* of the policy, with-
out the written consent of the insurers.

Payment of the debt, subsequently, to secure which the
policy was pledged, did not restore vitality to it ; the sim-
ple act of pledging *extinguished* the vital spark.

The *written order* did not constitute a pledge.    It was the
delivery as security of the debt.

To sustain a pledge of bills, notes, obligations, &c., the only proof required, is to establish the fact of *delivery* to the pledgee, *possession* by him, and a *consideration* therefor; no writing is necessary. To remove all embarrassment in the way of collecting payment in case of loss, plaintiff accompanied the pledge with an order on the company to pay to the person who is proved to be the pledgee.

It is no less a pledge because the plaintiff might have an interest in the policy for the surplus remaining after paying the debt to Angier.

Counsel assigned numerous reasons why such a stipulation *should be* embraced in a policy.

The opinion of the Court was drawn by

CUTTING, J.—The plaintiff, in his declaration, alleges, that, "on the 13th day of September, 1856, he was the owner of one-eighth part of the schooner Fred. Wording, and that the defendants, in consideration of a premium therefor, paid to them by him, on the 15th day of said September, made a policy of insurance upon said schooner for the term of one year, commencing on the 13th day of September aforesaid, at noon, and thereby promised to insure for him five hundred dollars upon said schooner for the term aforesaid, against the perils of the sea, and other perils in said policy mentioned; and avers that afterwards, and within the year aforesaid, to wit, on the 24th day of December of that year, the said schooner was by the perils of the sea wrecked and totally lost; of which the said defendants thereafterwards, to wit, on the same day, had notice and were bound to pay the same in sixty days. Yet, although requested," &c.

To this declaration the defendants file the following specification in brief of the nature and grounds of their defence, to wit:—"They expect to prove the act of barratry on the part of the master of the vessel insured by them, which act was not covered by the policy declared on in the plaintiff's writ."

Upon these pleadings, the only point at issue, at *Nisi Prius*, was the alleged barratry of the master. No one of

the allegations in the writ was denied, but were admitted, and the plaintiff, after having read his writ to the jury, could with safety have rested his case and was legally entitled to a verdict, unless the defendants, taking upon themselves the burden of proof, had maintained their specified defence, which they wholly failed to do.

But the plaintiff appears not to have rested his case upon the pleading, but unnecessarily introduced evidence tending to show, as the defendants contend, an intentional conceal-ment of a material fact as to the ownership of the property insured, at the time of its insurance, and a subsequent transfer of the policy, either absolutely or in pledge, without their consent, whereby the contract of insurance was, or became ineffectual.

The defence, as now presented, rests principally upon the testimony of *Oakes Angier*, (a witness called by the plaintiff,) who states, "that the master (Geo. O. Russ) took the vessel in the spring of 1856, and sailed her at the halves, the usual terms, manning and victualling her, and paying half her port charges, and so continued to sail her till she was lost, Dec. 9, 1856." Hence it is contended by the defendants that the master was the owner *pro hac. vice*, which fact was not disclosed to them. But, if not disclosed, was such fact material to the risk? It became material to the defendants in one respect but wholly for their benefit, for it allowed them to introduce evidence to prove the barratry of the master; otherwise that fact is immaterial, unless it should be, as the defendants have argued, that the master, under such circumstances with no insurance, would be induced, by selfish and corrupt motives, to disregard his duty to all parties interested in the safety of the vessel, himself among the rest. Courts do not assume that men so conduct in the management of their affairs, but rather that all are honest and faithful until the contrary appears.

Mr. Angier further testified, "that, sometime before the loss, the plaintiff, being bound on a voyage at sea, went with him to the office of the defendants, and there Mr. Brad-

bury, their secretary, wrote the order on the back of the policy, and the plaintiff signed it and left it with him for collection in case of loss in his absence, being then indebted to him on a balance of account, and, as security for said balance, which was soon thereafter settled and paid."

The indorsement, referred to on the policy, was in these words,—"In case of loss pay loss to O. Angier. J. A. Russ."

It is not now contended, as it was at the trial, that the indorsement constituted an assignment, but it is conceded, in the defendants' argument, that it only created Angier the plaintiff's agent. In the order of time, then, the case finds that the policy was indorsed (not transferred) and *left* with Angier for collection *in case of loss* in his, the plaintiff's absence, and, as security for said balance. It is the latter part of the foregoing testimony which the defendants rely upon as establishing a pledge.

One of the essential elements in the contract of pledge, is the delivery of the thing pledged to the pledgee, and the possession retained by him until the debt secured thereby shall have been paid, or the pledge forfeited. Was there here such a delivery of the policy? We think not. The evidence, as a whole, amounts to this,—I leave this policy with you (Angier) for collection in case of loss in my absence, and, from the proceeds, you may deduct my indebtedness to you. It is inferable that the policy was to be restored to the plaintiff on his return, in case no loss had occurred or collection made. Or, in other words, the security depended upon the loss and collection during the plaintiff's absence. Any other construction would defeat the very object of the parties, and render the policy void as to both. We cannot infer any such intention.

*Judgment for the plaintiff for the sum insured,*
*with interest from the time it became payable.*

Appleton, C. J., Davis, Kent, Walton, Dickerson and Barrows, JJ. concurred.